UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHARLOTTE B. PALM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 07-120-B-W |
| | ) |
| SISTERS OF CHARITY HEALTH SYSTEMS, et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON MOTIONS FOR SUMMARY JUDGMENT
AND ORDER ON MOTION TO AMEND COMPLAINT**

Charlotte Palm has sued eight defendants including Sisters of Charity Health Systems, Saint Mary's Regional Medical Center, Community Clinic Services, certain of their employees, administrators, and staff physicians, and Dr. Ira Shapiro, a licensed psychiatrist, in an eight-count complaint that alleges medical malpractice, conspiracy against rights, violation of civil rights, fraud, federally protected activities, libel and slander, personal injury, and negligence. The complaint arises in the context of Palm's admission to St. Mary's Regional Medical Center on July 23 or 24, 2005, and her subsequent stay at the hospital for three weeks. Palm alleges that twenty-four hours before she was scheduled to appear in court to address her involuntary commitment to the hospital, the defendants decided to release her. Seven of the defendants (the "Sisters of Charity Health Systems" defendants) have filed a single motion for summary judgment (Doc. No. 10) and Dr. Ira Shapiro has filed his own separate motion (Doc. No. 15). Palm has filed a motion to amend her amended complaint in order to "cure any

deficiencies" by adding additional factual assertions and increasing her claims to fourteen separate counts. (Doc. No. 25.) Although the third amended complaint would not change the outcome of this recommended decision regarding the motions for summary judgment, I now grant leave to amend. The clerk is directed to docket Palm's third amended complaint as the operative pleading in this case. However, I also recommend the court grant both motions for summary judgment to the extent both the amended complaint and the third amended complaint allege state law claims against any of the named defendants. None of the defendants have moved for summary judgment against the federal claims asserted in the amended complaint or the third amended complaint. It is apparent in both versions of the complaint that Palm is asserting that her federally protected constitutional rights were violated and, as the defendants have not moved for judgment on any constitutional claims, such claims must survive the motions for summary judgment.

### THE MOTION TO AMEND

After a responsive pleading has been served, a party may amend his or her complaint "only by leave of court or by written consent of the adverse party." Rule 15(a). Leave to amend "shall be freely given when justice so requires." Id. In Foman v. Davis, the Supreme Court instructed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962).  The defendants have joined the issue of the Maine Tort Claims Act and its applicability to this case in their respective motions for summary judgment.  Palm's third amended complaint makes it abundantly clear that in addition to her state law claims she is also asserting federal constitutional violations as to which the Maine Tort Claims Act would have no applicability.  The immunity conferred by the MTCA does not extend to federal claims brought under § 1983 of the Civil Rights Act against state actors.  See, e.g., Hegarty v. Somerset County, 25 F.3d 17, 17 n. 1 (1st Cir. 1994) (implicitly recognizing that discretionary function immunity under the MTCA does not reach federal claims under § 1983); Blackstone v. Quirino, 309 F. Supp. 2d 117 (D. Me. 2004) (applying MTCA discretionary function immunity to state law claims of illegal arrest and excessive force, but not to analogous federal claims, which are governed by the federal doctrine of qualified immunity); McPherson v. Auger, 842 F. Supp. 25 (D. Me. 1994) (applying same distinction); Jenness v. Nickerson, 637 A.2d 1152 (Me. 1994) (same).  Thus, even though the MTCA extends to claims brought against state actors for medical malpractice, Hinkley v. Penobscot Valley Hosp., 2002 ME 70, ¶¶ 10 & 15, 794 A.2d 643, 646-47, it can have no greater reach in the medical malpractice context than it has elsewhere insofar as federal claims are concerned.

      Because the third amended complaint would more clearly state those alleged federal violations, and because the original amended complaint just as clearly referenced federal claims, I cannot say that this amendment, which elaborates upon those federal claims, is necessarily futile.  By the same token, I am not suggesting the federal claims might not be subject to dismissal or summary judgment on some basis other than the

Maine Tort Claims Act or the Maine Health Security Act. Those issues have simply not been raised in the motions for summary judgment that are now before me.

### THE MOTIONS FOR SUMMARY JUDGMENT

The seven Sisters of Charity Health Systems defendants have moved for summary judgment claiming the protections of the Maine Tort Claims Act ("MTCA"), because any entity that acts pursuant to a contract with the Department of Health and Human Services when admitting, treating or discharging a patient pursuant to Title 34-B of the Maine Revised Statutes is by statutory definition a governmental entity for purposes of the MTCA. See 34-B M.R.S. § 3861(1)(A). Thus, say the defendants, they enjoy discretionary function immunity under the Act. See 14 M.R.S. § 8111. Alternatively, the defendants contend that Palm's claims are nevertheless barred as a matter of law for her failure to comply with the 180-day notice requirement of 14 M.R.S. § 8107(1). Dr. Shapiro's motion echoes these same MTCA issues and also claims as another ground for dismissal that Palm failed to comply with the Maine Health Security Act ("MHSA"), 24 M.R.S. §§ 2501 et. seq.

This Court recently summarized the summary judgment standard as follows:

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Santoni v. Potter, 369 F.3d 594, 598 (1st Cir.2004). "Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir.1991) (internal citation omitted). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is

> "material" if it has the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.2000) (citation omitted). In applying this standard, the record is viewed in the light most favorable to the nonmoving party. FDIC v. Anchor Props, 13 F.3d 27, 30 (1st Cir.1994).

Therrien v. Town of Jay, 483 F. Supp. 2d 19, 24-25 (D. Me. 2007).

The disposition of these motions for summary judgment is colored by Palm's failure to comply with District of Maine Local Rule 56 in that she has not responded to the defendants' statement of material facts by filing an opposing statement that admits, denies, or qualifies the defendants' statement, *with citation to appropriate record evidence.* See D. Me. Loc. R. 56(c). None of the three complaints submitted by Charlotte Palm is signed under oath or penalty of perjury, nor has she submitted a separate affidavit or sworn statement of facts that would provide record support for her denials or additional facts. While the *pro se* pleadings make it clear that Palm wishes to dispute many of the factual assertions made by the defendants, she simply has not provided the court with any evidentiary material to support those general denials. Furthermore, and, most tellingly, the bulk of her unsworn factual assertions do not pertain to the crucial issues of the MTCA immunity and notice provisions and MHSA compliance, the only issues raised by the motions for summary judgment on the state law claims.

In the District of Maine the Court generally accords some leeway to *pro se* litigants. In Marcello v. Maine, 489 F. Supp. 2d 70, 77 (D. Me. 2007), this Court described the process thusly:

> In any event, the Court recognizes that, for some matters, pro se litigants receive the benefit of the doubt. For example, when construing a complaint for the purposes of a motion to dismiss, "the allegations of a [pro se] complaint . . . are held to less stringent standards than formal

> pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 10 n. 7
> (1980); see also, Instituto De Educacion Universal Corp. v. United States
> Dep't of Educ., 209 F.3d 18, 23 (1st Cir.2000).  While a liberal reading
> may be appropriate in the summary judgment context, it is also true that
> "[j]udges and magistrate judges who review these filings must be able to
> rely on procedural rules so as to avoid becoming the lawyer for the
> unrepresented plaintiff or devoting an excessive portion of their time to
> such cases." Clarke v. Blais, 473 F. Supp. 2d 124, 129 (D. Me.2007).

I have accorded Palm's *pro se* filings the appropriate latitude in my recitation of the following undisputed material facts which are deemed admitted.  Although Palm generally denies all of these statements and specifically takes issue with the multiple facts recited in paragraphs 1, 4, 6, and 21, she does not provide an affidavit or other record material to dispute any of the statements.

## Statement of Fact

Charlotte Palm was brought by law enforcement personnel to Maine General Medical Center during the late evening/early morning of July 24, 2005, immediately following a 12-hour standoff with police.  Law enforcement officers apparently told the hospital personnel that during the standoff, Palm fired shots from a handgun into a ceiling and attempted to shoot herself in the head.  Her suicide attempt failed because the firearm was apparently out of ammunition and the standoff concluded when police used teargas to subdue her.  Palm was evaluated by crisis emergency personnel at Maine General who then made a determination that she was a candidate for emergent psychiatric treatment. During the early morning of July 24, Defendant Elliot J. Gruen, D.O., received a call from Maine General and, after being informed of Palm's presentation, history and clinical status, agreed to have her transferred to St. Mary's where he would evaluate her within 24 hours.  (SMF ¶ 1.)  After her presentation to St. Mary's, Dr. Gruen performed a psychiatric/mental status examination of Palm.  (Id. ¶ 2.)  The primary purpose of Dr.

Gruen's exam and evaluation of Palm at that time was to determine whether she required psychiatric treatment and/or hospitalization and, if so, whether it would be voluntary or involuntary. (Id. ¶ 3.)

During the course of evaluating Palm, Dr. Gruen was advised that her history was significant for at least two previous psychiatric hospitalizations (with the staff later being informed after her admission that she had at least three prior psychiatric hospitalizations in Georgia, Utah and South Carolina). Other significant history reported to Dr. Gruen included recent paranoid and delusional behavior that had increased over the past two weeks and culminated in the police standoff and attempted suicide. (Id. ¶ 4.)

Dr. Gruen's conclusion, after completing a mental status examination, was that Charlotte Palm had a serious psychotic disorder and that, due to her recent paranoid and delusional behavior, she required hospitalization. (Id. ¶ 5.) Dr. Gruen further concluded that Plaintiff's condition, as evidenced by her recent behavior, rendered her at imminent risk of causing harm to herself or others and that she required emergency psychiatric care. (Id. ¶ 6.)

Based on Dr. Gruen's findings, he declared her a psychiatric emergency and executed the necessary documentation – including a document entitled State of Maine Application for Emergency Involuntary Admission to Mental Hospital – to effect Palm's admission to St. Mary's. The emergency admission to St. Mary's was on an involuntary basis pursuant to 34-B M.R.S. § 3863. (Id. ¶ 7.) Palm's involuntary commitment was conducted pursuant to and in conformity with the laws governing involuntary psychiatric hospitalizations then in force. (Id. ¶ 8.) The procedures followed with respect to Palm's involuntary admission and subsequent treatment and discharge, including the preparation,

execution and filing of documentation relating thereto, were consistent with the laws and regulations then applicable, including 34-B M.R.S. § 3861.  (Id. ¶ 9.)

From July 24 through August 12, 2005, Palm was admitted to St. Mary's Behavioral Intensive Care Unit and its Adult Psychiatric Unit – both within its Adult Behavioral Services Department.  During her admission, she was treated pharmacologically and received individual and group psychotherapy.  (Id. ¶ 10.)  She was treated by, among others, psychiatrist Abhay Singh, M.D., and St. Mary's staff, including social worker Andie Wishman.  (Id. ¶ 11.)  Palm progressed sufficiently to permit her discharge home on August 12, 2005.  (Id. ¶ 12.)

At all times relevant to Palm's claims, including during the time of her involuntary commitment, Drs. Gruen and Singh were psychiatrists licensed to practice medicine by the State of Maine who were employees of the Sisters of Charity Health System ("SCHS").  SCHS is, and in 2005 was, the parent corporation and sole owner of St. Mary's.  The professional services of Drs. Singh and Gruen were leased by SCHS to Community Clinic Services ("CCS").  Drs. Singh and Gruen, pursuant to the terms of their employment with SCHS in 2005, were members of St. Mary's medical staff and provided psychiatric services for St. Mary's Adult Behavioral Services Department.  (Id. ¶¶ 13, 20.)

At all times relevant to Plaintiff's claims, social worker Andie Wishman was an employee of St. Mary's working in the Adult Behavioral Services Department (id. ¶14) and Paul S. Rouleau was an employee of St. Mary's and Director of the Adult Behavioral Services Department (id. ¶ 15).  Mr. Rouleau did not provide any care or treatment to

Palm in 2005 and had no personal involvement in her involuntary commitment, her course of treatment, or discharge from St. Mary's. (Id. ¶16.)

At all times relevant to Plaintiff's claims, St. Mary's was under contract with the Maine Department of Health and Human Services ("DHHS") to evaluate, admit and care for patients who required emergent psychiatric hospitalization and to, among other things, maintain beds for and accept emergency involuntary psychiatric patients. (Id. ¶ 17.) At all times relevant to Plaintiff's claims, St. Mary's was acting pursuant to and in conformity with its contract with DHHS, which required, among other things, that St. Mary's maintain beds for and accept emergency involuntary patients. (Id. ¶ 18.)

The contract by and between St. Mary's and DHHS in force at the time of Palm's admission provided:

> [St Mary's], and any of [its] employees and agents, when admitting, treating or discharging a patient hereunder shall be deemed for purposes of civil liability to be a governmental entity or an employee of a government entity under the Maine Tort Claims Act, 14 M.R.S. § 8101, et seq., and 34-B M.R.S., § 3861(1)(A), to the extent allowed by law.

(Id. ¶ 19.)

Prior to being served with the summonses and complaints that initiated this lawsuit, none of the defendants was served with a notice or pleading from Palm and none was served with a written notice of claim pursuant to the Maine Tort Claims Act, 14 M.R.S. § 8107. (Id. ¶ 21.)[1]

Defendant Ira Shapiro has filed a separate motion for summary judgment with an accompanying statement of material facts which adopts and incorporates by reference the

---

[1] Palm has provided the Court with a copy of a letter, dated December 23, 2005, that she claims to have sent to St. Mary's Regional Medical Center. (Doc. No. 22-2.) Assuming that I accept and incorporate the fact that the letter was sent, it does not comply with the Maine Tort Claims Act notice requirement, although the letter does advise that St. Mary's should "get ready for the biggest lawsuit you people ever imagined landing in your hands."

9

entire statement of material facts, affidavits, and summary of relevant facts in co-defendants' motion for summary judgment. (Shapiro SMF ¶ 1.) Shapiro separately asserts the following.

At all times relevant, including the time that Palm was involuntarily committed to St. Mary's, Shapiro was a licensed psychiatrist and a member of St. Mary's medical staff. (Id. ¶ 2.) Shapiro treated Palm while she was involuntarily committed at St. Mary's. (Id. ¶ 4.)

Shapiro was never served with any other notice or pleading from Palm, other than the summons and complaint in this matter, and specifically was not served with written notice pursuant to Maine Tort Claims Act, 14 M.R.S. § 8107, or Maine Health Security Act, 24 M.R.S. § 2903. (Id. ¶ 5.)

## Discussion

Dr. Shapiro's motion for summary judgment relies upon both the Maine Tort Claims Act ("MCTA"), 14 M.R.S. §§ 8107 *et. seq.*, and the Maine Health Security Act ("MHSA"), 24 M.R.S. §§ 2501 *et. seq.* He correctly points out that Palm complied with neither Act and that she must comply with both of these statutory directives in order to maintain state law claims for professional negligence against a health professional in this court. To the extent Charlotte Palm is suing for negligence, malpractice, or medical decision-making, other than allegations of federal constitutional violations, she must comply with the MHSA. See Demmons v. Tritch, Civ. No. 06-140-B-W, 2007 WL 777541, 2007 U.S. Dist. LEXIS 17501 (D. Me. 2007) (Mag. J. Rec. Dec.), aff'd, 484 F. Supp. 2d 177 (D. Me. 2007); Chapman v. Me. Dep't of Corr., Civ. No. 04-103-B-H, 2005 WL 3448011, 2005 U.S. Dist. LEXIS 33226 (D. Me. 2005) (Mag. J. Rec. Dec.). A

plaintiff may not proceed in this court without complying with the law's prelitigation notice and screening provisions. See Hewett v. Inland Hosp., 39 F. Supp. 2d 84 (D. Me.1999). Both this court and the New Hampshire District Court have declined to exercise supplemental jurisdiction over professional negligence claims when contained within a complaint alleging a federal constitutional violation. I conclude it would be inappropriate for this court to retain jurisdiction of the state law professional negligence claims against Shapiro on the basis that Palm might eventually comply with the MHSA. See Little v. Tall, 195 F. Supp. 2d 199 (D. N.H. 2002).

Shapiro, as well as the other defendants, also moved to dismiss all state law claims because of Charlotte Palm's failure to comply with the MTCA. The undisputed material facts establish that all defendants fall within the ambit of MTCA's protections. See Taylor v. Herst, 537 A.2d 1163, 1165-66 (Me. 1988) (extending MTCA immunity to a doctor employed by Maine Medical Center who made an involuntary commitment determination) and 34-B M.R.S. § 3861(1)(A). The MTCA not only provides absolute discretionary immunity to these individual actors, it also provides for procedural notice requirements. Since all of Palm's state law claims relate to her treatment while a patient pursuant to an involuntary commitment, all of the defendants would be entitled to discretionary immunity for their conduct. However, even if that immunity were somehow negated, Palm has not shown that she substantially complied with the notice provision of the MTCA.

Section 8107(1) of title 14 of the Maine Revised Statutes sets forth the following notice requirement for claims under the Maine Tort Claims Act:

11

> **Notice requirements for filing.** Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180-day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing:
>
>> **A.** The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;
>>
>> **B.** A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;
>>
>> **C.** The name and address of any governmental employee involved, if known;
>>
>> **D**. A concise statement of the nature and extent of the injury claimed to have been suffered; and
>>
>> **E**. A statement of the amount of monetary damages claimed.

14 M.R.S. § 8107(1). With respect to the 180-day timeframe for complying with this notice requirement, all of Palm's claims are tethered to the events of July 23 through August 12, 2005. The 180-day notice period therefore ended on or about February 1, 2006.

In her noncompliant Local Rule 56 submission Charlotte Palm did include what purports to be a timely "notice" sent to St. Mary's, dated December 23, 2005. However, the letter she sent is deficient in at least two major aspects. Palm does not provide her address and she does not provide a statement of the amount of monetary damages claimed. Nor does Palm provide a concise statement of the nature and extent of her injury, other than a general reference to pain and suffering caused by her claimed illegal commitment to the hospital. The thrust of Palm's "notice" appears to be her warning to the hospital that she does not intend to pay the bills that apparently had been sent to her

following her hospital stay. It is not the sort of notice that would constitute substantial compliance with the MTCA.

### Conclusion

Based upon the foregoing I now grant Palm's motion to amend. (Doc. No. 25.) The Clerk is directed to enter the third amended complaint (Doc. No. 25-2) as the operative pleading in this case. Further, I recommend that the Court grant the pending motions for summary judgment, as they relate to the third amended complaint, and dismiss counts three, four, five, six, seven, ten, eleven, twelve, and thirteen. If the Court adopts this recommendation, what will remain on the docket are Palm's claims for alleged violations of her constitutional rights as contained in count one (a conspiracy claim), count two (a First Amendment/Fourth/Fourteenth Amendment claim), count eight (a constitutional "privacy" claim), count nine (a claim of supervisory liability pursuant to 42 U.S.C. § 1983), and count fourteen (a *respondeat superior* claim allegedly brought under § 1983).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 28, 2007                               /s/ Margaret J. Kravchuk
                                                U.S. Magistrate Judge