UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHARLOTTE B. PALM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 07-120-B-W |
| | ) |
| SISTERS OF CHARITY HEALTH | ) |
| SYSTEMS, et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON A MOTION TO DISMISS (Docket No. 56) and ON A MOTION FOR SUMMARY JUDGMENT (Docket No. 58).**

Charlotte Palm has sued multiple defendants for alleged rights violations surrounding her admission to St. Mary's Regional Medical Center on July 23 or 24, 2005, and her subsequent involuntary commitment at the hospital for three weeks. This recommended decision addresses two motions: a motion to dismiss filed by Sisters of Charity Health Systems, St. Mary's Regional Medical Center, Community Clinic Services, Elliot Gruen, Paul Rouleau, Abhay Sing, and Andie Wishman (Docket No. 56) and a motion for summary judgment filed by Ira Shapiro (Docket No. 58).

This is the second round of dispositive motions in this action and the only claims remaining are federal civil rights claims as pled in Palm's third-amended complaint. Palm argues that the defendants discriminated against her due to her "religious beliefs concerning the 'Bible Code.'"[1] The defendants rely on two determinative arguments in

---

[1] (See Mem. Resp. Mot. Dismiss at 1, Docket No. 60; Mem. Resp. Mot. Summ. J. at 1, Docket No. 61.)

moving for dismissal.² First, with regards to Palm's potential 42 U.S.C. § 1985(3) claim, Palm has no basis for asserting that she is a member of a protected class within the purview of that act – in other words she has not alleged a discriminatory class-based animus. Second, as to any potential claims under 42 U.S.C. § 1983 these defendants argue that – even though they were successful in rebuffing Palm's Maine Tort Claims Act claims by taking the position that they should be afforded immunity as governmental entities/employees -- they are not state actors for purposes of 42 U.S.C. § 1983 claims and, therefore, are not reachable under that statute.

## Discussion

I must accept all factual allegations in Palm's complaint as true and take them in the light most favorable to her. Erickson v. Pardus, --- U.S. ----, ----, 127 S.Ct. 2197, 2200 (June 4, 2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). To satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, Palm's complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citing Fed.R.Civ.P. 8). See also Bell Atl. Corp. v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1964 (May 21, 2007) (citations omitted); Erickson, 127 S.Ct. at 2200; Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atl. Corp., 127 S.Ct. at 1965. Palm must plead

---

²     Defendant Shapiro joins the other defendants' motion as to these two arguments (Mot. Summ. J. at 7) and adds an additional discussion pertaining to qualified immunity (id. at 7-18). Although Shapiro frames his motion as only seeking summary judgment, by joining the other defendants on these two arguments he is in fact seeking failure-to-state-a-claim dismissal.

2

enough facts to state a "plausible" basis for the claim. Id. Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (emphasis added). In this case there are two dispositive legal issues that preclude relief under the federal civil rights statutes.

### *Tenability of a 42 U.S.C. § 1985(3)/§ 1986 Claim*

As noted above, Palm makes clear in responding to these dispositive motions that her claim for discrimination under 42 U.S.C. § 1985(3)/§ 1986 is tethered to her membership in an alleged class of people who believe in the "Bible Code."

The relevant portion of 42 U.S.C. § 1985(3), see Donahue v. City of Boston, 304 F.3d 110, 122 (1st Cir. 2002), reads:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws …. [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1986 of that title provides as relevant:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act….

42 U.S.C. § 1986.  This is a provision that extends liability to individuals who knowingly fail to prevent § 1985 conspiracies. See Donahue, 304 F.3d at 122.

The dispositive legal issue for Palm's § 1985(3) claim is whether or not she can reach these defendants who are private actors for purposes of federal civil rights laws for a conspiracy to deprive her of her right to free exercise of religion guaranteed by the First Amendment.  The answer is no, the reason being that, in contrast to the Thirteenth Amendment, see Griffin v. Breckenridge, 403 U.S. 88, 104-05 (1971), and the right to travel, see id. at 105-06; United States v. Guest, 383 U.S. 745, 760 (1966), the First Amendment right is not one that promises redress for private encroachments, see Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-70, 274-76 (1993); United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 833-834, 836-37 (1983); Park v. City of Atlanta, 120 F.3d 1157, 1162 (11th Cir. 1997); see also Libertad v. Welch , 53 F.3d 428, 449-50 (1st Cir. 1995).  Palm's third amended complaint fails to state a cause of action under 42 U.S.C. § 1985(3).  See Aulson v. Blanchard, 83 F.3d 1, 6 (1st Cir. 1996) (footnote omitted).

*Defendants "State Actor" Status for Purposes of 42 U.S.C. § 1983 Claims*

In their current dispositive motion the defendants argue that they are not state actors within the compass of 42 U.S.C. § 1983 liability.  Palm pins her hopes of surviving these dispositive motions as to her 42 U.S.C. § 1983 claims on her argument that in defense of her Maine Tort Claims Act claims they successfully asserted that they were entitled to immunity under Maine Law because of the state law provision for governmental immunity.  See  Palm v Sisters of Charity Health Sys., Civ. No. 07-120-B-

W, 2007 WL 5007248, *6 (D. Me. Dec. 28, 2007) (Kravchuk, Magis. J., recommended decision) aff'd 537 F. Supp. 2d 228 (D. Me. 2008).

Maine Superior Court Justice Jeffrey Hjelm has addressed a defense argument that a private doctor who involuntarily committed the plaintiff to a private hospital was not acting under color of state law for purposes of federal civil rights liability. See Saunders v. Tisher, Civ. No. 04-27, 2005 Me. Super. Lexis 197, 1-25 (Dec. 28, 2007) aff'd 2006 ME 94, 902 A.2d 830.[3] His decision is meticulous and well-reasoned and the facts of that case – including the initial police involvement, id. at 16 & n. 6– are not meaningfully distinguished from Palm's.

As relevant to the current dispute the Court reasoned:

> [T]he relationship between the private actor and governmental policy -- presents the closest issue raised by the motion at bar. In holding that a private physician is a governmental employee for purposes of the Maine Tort Claims Act, the Law Court has stated that
>> a private physician is acting in an official capacity on behalf of the State when performing the task of determining, for involuntary commitment purposes, whether a "person is a mentally ill individual and because of his illness, poses a likelihood of serious harm." He acts under the sole authority of the statute, and his function is "central to effecting the State's important responsibilities of protecting the public and treating the mentally ill." . . .While acting in this capacity, [a private physician]. . .is immune from civil liability."
>
> Taylor v. Herst, 537 A.2d 1163, 1165 (Me. 1988) (citation omitted). Indeed, the plaintiff's sole substantial argument in opposition to this aspect of the motion is based on the holding in Taylor.
>
> The facial support that this language provides to the plaintiff's section 1983 claim dissipates upon further examination. The language from Taylor quoted above was derived from the Court's opinion in Darling v. Augusta Mental Health Institute, 535 A.2d 421, 428 (Me. 1987). In Darling, the Court examined the civil exposure of a physician who was a state employee and who was involved in assessing the condition of the plaintiff for purposes of involuntary commitment to AMHI, a state facility. Thus, the origin of the passage in Taylor is an earlier case where clearly

---

[3] The Maine Law Court noted that Saunders was no longer asserting state action and, thus, was not pursuing 42 U.S.C. § 1983 claims. Id. 2006 WL ¶ 5 n. 1, 902 A.2d at 832 n.1.

there was state action. The Law Court reiterated this language in Clark v. Maine Medical Center, 559 A.2d 358, 360 (Me. 1989). In Clark, a private physician was found to be a state employee for purposes of the Maine Tort Claims Act, when he determined whether a person qualified for involuntary commitment to AMHI. Id. Thus, in Darling (the source of the language quoted in Taylor) and in Clark, the connection between the physician's conduct and governmental interest is apparent from the very fact that the private physician rendered a decision of whether a person should have been admitted to a state psychiatric hospital. Although the state might not participate in the proceedings that resulted in a commitment, a patient's ultimate admission into a state hospital manifests a level of public and private entwinement that is both qualitatively and quantitatively greater than the process that was authorized and used in the case at bar. Therefore, the court proceeds cautiously in its consideration of the language in Taylor on which the plaintiff places weight.

  The larger issue, however, is whether private action, taken without encouragement from or participation by the state, manifests such a level of governmental entwinement that it should be treated as the action of the state itself. The court is unable to reach this conclusion. There can be no dispute that, as the Law Court has stated in Taylor, Darling and Clark, the state has a responsibility to protect the mentally ill and the public. One mechanism created to discharge this responsibility is the involuntary commitment process. However, the notion of an "entwinement" clearly requires more than such a public responsibility or interest. To rise to the level of state action, the nature of that entwined relationship has been expressed in various ways: the private character of the actor must be "overborne" by the government, see Brentwood [Acad. V. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. [288,] 298 [(2001)]; that relationship must be "close, see id. at 301; there must be a "range of contacts between the state and the ostensibly private actor [sufficient to] amount to a critical mass of entwinement. . . .," Logiodice [v. Trs. Me. Ctr. Inst.] , 296 F.3d [22,] 35 [(1st Cir. 2002)] (Lipez, J., dissenting).

  Even beyond this, it is vital to bear in mind that the entwinement analysis is an empirical application used to determine if an otherwise private agent has acted "under color of law," that is, in circumstances that transform otherwise private action into state action. This is deemed to occur "when it can be said that the State is responsible for the" conduct underlying the claim, Brentwood, 531 U.S. at 295 (emphasis in original), and when the challenged conduct "can fairly be attributed to the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982), quoted in Brentwood, 531 U.S. at 307 (Thomas, J., dissenting).

  The role of a private physician in the process of involuntarily committing someone to a private hospital does not implicate state action to the degree necessary to support a contention that the physician is entwined with the state. The state has provided a regulated process for that commitment, because the state has an interest in allowing for such

> commitments and ensuring that such commitments are accomplished within parameters. However, as is noted above, in the present case that process was initiated privately, and it resulted in an admission to a private facility. There is little or no more entwinement in these circumstances than -- use the analogy suggested in <u>Spencer</u> -- the one that exists in the process where, by state law, a creditor may repossess goods held by a debtor. Nearly every statute or regulatory scheme reflects a judgment by state officials (legislators or representatives of the executive) that a matter is of sufficient policy or legal significance to warrant the creation of a law. When such a law is invoked, the existence of the underlying policy by itself does not mean that the state and the private actor are entwined to an extent rendering the latter an agent for the state. For these reasons, despite the existence of the policy noted by the Law Court in <u>Taylor</u> and other cases, the court here is persuaded that the implementation of the involuntary commitment process by a private physician, when the commitment is to a private hospital, does not amount to state action.

<u>Id.</u> at 17-22.

Justice Hjelm further noted:

> [A]fter the Law Court issued its decision in <u>Taylor</u> and several other cases, the legislature codified those holdings by amending the Maine Tort Claims Act so that, now by statute, private physicians who are involved in the involuntary commitment process are deemed to be state employees for purposes of that Act and therefore are entitled to protections provided by the MTCA. <u>See</u> 34-B M.R.S.A. § 3861(1)(A). This statutory categorization cannot be equated with a substantive determination that private physicians, such as the defendant, are operating under color of state law when they insert themselves into the involuntary commitment process. As is demonstrated by the analysis set out in this order, that determination rests on an actual and close consideration of factors prescribed by a significant body of caselaw. The enactment of section 3861(1)(A) appears to have resulted from a legislative recognition that physicians' commitment assessments and decisions should not be influenced by the prospect of civil liability. <u>See</u> <u>Taylor</u>, 537 A.2d at 1166. Such a conclusion, however, should not be mistaken for a determination that, under a different set of legal principles, such physicians in fact act under color of law when they make those kinds of assessments and decisions.

<u>Id.</u> at 22-23 (footnote omitted).

This disposition was also in the context of a motion to dismiss and the court considered the question of whether or not the inquiry was too "fact-bound" for such a

summary disposition and concluded that is was fair to make the legal determination at this stage of the litigation. See id. at 23-24. I recommend that the Court follow the Maine Superior Court in Saunders and grant the dispositive motions as to all of Palm's 42 U.S.C. § 1983 counts because they fail to state a 42 U.S.C. § 1983 claim against these non-state actors.

## Conclusion

For the reasons above, I recommend that the Court grant the motion to dismiss filed by Sisters of Charity Health Systems, St. Mary's Regional Medical Center, Community Clinic Services, Elliot Gruen, Paul Rouleau, Abhay Sing, and Andie Wishman (Docket No. 56) and the dispositive motion filed by Ira Shapiro (Docket No. 58).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 28, 2008.                                   /s/ Margaret J. Kravchuk
                                                U.S. Magistrate Judge